**DiSABATO & BOUCKENOOGHE LLC**
Lisa R. Bouckenooghe, Esq.
David J. DiSabato, Esq.
4 Hilltop Road
Mendham, New Jersey 07945
Phone: 973.813.2525
Fax: 973.900.8445

Attorneys for Plaintiff Mitchell Rait,
On behalf of himself and the putative class

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MITCHELL RAIT, on Behalf of Himself and All Others Similarly Situated,<br><br>                    Plaintiffs,<br><br>vs.<br><br>ELRAC LLC, d/b/a ENTERPRISE RENT-A-CAR and HIGHWAY TOLL ADMINISTRATION, LLC,<br><br>                    Defendants. | Civil Action<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>Case No: 2:16-cv-08138-MCA-MAH<br>Honorable Madeline Cox Arleo, U.S.D.J.<br>Honorable Michael A. Hammer, U.S.M.J. |

Plaintiff Mitchell Rait, of Livingston, New Jersey, on behalf of himself and the putative class, by and through his undersigned attorneys, by way of Complaint, states and alleges matters pertaining to himself and his own acts, upon personal knowledge, and as to all other matters, upon information and belief, based upon the investigation undertaken by his counsel, as follows:

### NATURE OF THE ACTION

1. Plaintiff Mitchell Rait ("Rait" or "Plaintiff") brings this action for damages relating to the improper assessment of charges and fees arising from the use of Enterprise rental vehicles on toll roads.

2. Specifically, Plaintiff alleges that Enterprise charges rental drivers for tolls and administrative fees, even though rental drivers have paid said tolls through the use of their personal EZPass transponders.

3. In Plaintiff's case, for example, Plaintiff paid a toll using his personal EZPass transponder while operating an Enterprise rental vehicle, but was later charged by Defendants $14.00 for the same toll, plus a $13.00 administrative fee.

4. Enterprise and Highway Toll Administration LLC are well aware of this practice and reap substantial profits by charging Enterprise customers in this manner.

5. Defendants' practice of knowingly "double billing" drivers for already-paid tolls, and then adding an administrative fee to the process, constitutes, among other things, an unconscionable commercial practice in violation of the New Jersey Consumer Fraud Act, and results in the unjust enrichment of Defendants.

## PARTIES

6. Plaintiff Mitchell Rait is a natural person and a citizen of the State of New Jersey residing at 23 Mohawk Drive, Livingston, New Jersey 07039. Plaintiff is a consumer and is a person within the meaning of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1(d) *et seq.*

7. Defendant ELRAC, LLC. d/b/a Enterprise Rent-a-Car ("Enterprise") is a Delaware for-profit corporation, with a principal place of business located at 600 Corporate Park Drive, St. Louis, Missouri 63105. Enterprise is in the business of, among other things, renting vehicles to consumers for short and medium term use.

8. Defendant ELRAC, LLC operates the Enterprise Rent-a-Car Branch located at 38 Deforest Avenue, East Hanover, New Jersey, 07936-2809.

9. Defendant ELRAC, LLC is a subsidiary of Enterprise Holdings, Inc. Enterprise Holdings, Inc., d/b/a Enterprise Rent-a-Car ("EHI") is a foreign for-profit corporation, with a principal place of business located at 600 Corporate Park Drive, St. Louis, Missouri 63105.

10. Both ELRAC, LLC and EHI share of the same managing members and officers. Specifically, Pamela M. Anderson is the Presidenct of EHI and a member of its Board of Directors. Pamela M. Anderson is also reported to be an officer of ELRAC, LLC as of the July 5, 2016 Annual Report filed with the State of New Jersey. Andrew C. Taylor also sits on the Board of Directors of EHI and is also reported to be an officer of ELRAC, LLC as of the July 5, 2016 Annual Report filed with the State of New Jersey.

11. Defendant Highway Toll Administration, LLC ("HTALLC") is a Limited Liability Company, with a principal place of business located at 66 Powerhouse Road, Suite 301, Roslyn Heights, New York 11577. HTALLC is in the business of providing automated tolling services to the rental car industry and in facilitating the collection of tolls and fees on behalf of that industry.

12. Defendant ELRAC, LLC is party to an agreement with Defendant HTALLC whereby HTALLC provides electronic toll collection services to ELRAC, including automatic payment of tolls.

13. EHI is also party to an agreement with Defendant HTALLC whereby HTALLC provides electronic toll collection services to EHI affiliates, including automatic payment of tolls.

14. Purusant to that agreement, HTALLC pays toll charges purportedly incurred by a rental vehicle and notifies ELRAC, LLC of the charge.

15. Those charges are then passed on to consumers, who are charged for reimbursing the toll charge to HTALLC as well charged for an administrative fee of up to $25.00.

## JURISDICTION AND VENUE

16. This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

17. This Court has subject matter jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 2201, and pursuant to 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which some members of the class of plaintiffs are citizens of states different from at least one Defendant. Upon information and belief, there are more than 100 Class members.

18. This Court has jurisdiction over Enterprise because it maintains corporate places of business in this District and does substantial business in this District. Enterprise maintains car rental offices at approximately 132 locations in New Jersey and operates a fleet of tens of thousands of vehicles.

19. This Court has jurisdiction over HTALLC because it does substantial business in this District and reaps substantial profits from conducting business within this District. HTALLC processes electronic toll collection transactions on approximately nine major toll roads in the State of New Jersey.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) & (2), as acts and/or omissions giving rise to Plaintiffs' claims occurred in this District; Defendants maintain and oversee agents or representatives in this District; and Defendants have conducted business activities on an ongoing basis in this District at all times material hereto.

21. Plaintiff has standing under Article III of the U.S. Constitution in that he suffered an injury in fact consisting of a loss of monies in the amount of $27.00, plus additional costs and expenses incurred as a direct and proximate result of Defendants' conduct.

## FACTUAL ALLEGATIONS

22. On or about August 3, 2015, at 10:28 a.m., Plaintiff rented a vehicle from Defendant Enterprise at its East Hanover, New Jersey location. The contract for the rental car bears Rental Agreement Number 1X3M1X.

23. In order to secure the rental, Plaintiff Rait provided Enterprise with his personal credit card.

24. Enterprise offers an optional "TollPass device" for a $3.95 daily fee. If activated, the TollPass device allows drivers to use express toll lanes during their rental period and charges any tolls, as well as the daily fee, to the driver's credit card.

25. Alternatively, E-ZPass's "Rental Car FAQ's" advise that "you can use your E-ZPass tag in any vehicle with two axles, a maximum gross weight of 7,000 pounds, and single rear tires (includes RV's with dual rear tires)."

26. Plaintiff did not purchase Enterprise's optional TollPass Program.

27. Instead, Plaintiff removed his E-ZPass tag from his personal vehicle and placed it in the Enterprise rental car.

28. On August 16, 2015 at 12:58 p.m., Plaintiff drove the rental car through the Holland Tunnel and paid the toll using his personal E-ZPass. The display screen at the toll read "E-ZPass Paid."

29. A toll in the amount of $11.75 was charged to Plaintiff's E-ZPass account for this trip. Plaintiff's E-ZPass statement confirms that the toll was paid as described, and was debited

from Plaintiff's account.

30. On August 19, 2015, at 9:43 a.m. Plaintiff returned the rental car to Enterprise.

31. However, by letter dated August 28, 2015, Plaintiff was incorrectly advised by Enterprise's Customer Serivce Department that the rental car used by Plaintiff incurred a citation or toll during his rental period. Specifically, the letter advised that Plaintiff passed through the Holland Tunnel toll on August 16, 2015 without paying the toll.

32. Incredibly, the letter went on to state that "in order to help you avoid additional charges and/or penalties, we are immediately paying the Invoice Amount Due on your behalf." The letter was issued by Enterprise Customer Service Department.

33. The letter further stated that due to the alleged "failure" to pay the toll, Enterprise was immediately charging the credit card that Plaintiff placed on file the toll amount of $14.00. In addition, Enterprise assessed a $13.00 administrative fee, purportedly pursuant to the terms of the Rental Agreement.

34. Plaintiff immediately contacted Enterprise by telephone, in response to their August 28, 2015 letter "invitation" to do so, and demanded that the charges be reversed. He advised that the toll had already been personally paid by him and on September 4, 2015, faxed proof of payment to Enterprise. Plaintiff retained the fax confirmation evidencing the transmission.

35. Enterprise responded that this "happens all the time."

36. Indeed, consumer complaints boards reflect as much on social media forums such as Complaintsboard.com:

> Seems like this is a common complaint and I'm hoping this grabs the attention of an Enterprise representative like some other posts I've seen. Long story short, I was conducting business out of state and I wasn't used to paying tolls and happened to pass (2) $.40

6

tolls. So, after spending countless time finding out where and how to pay these IL state tolls, I went on the Illinois Toll way website THE DAY OF THE INCIDENT and paid the whopping $.80. I have confirmation emails from the Illinois Toll way and everything. This was back in September by the way. Fast forward to beginning of January...I get this Enterprise letter stating THEY paid the tolls and THEY are going to charge me $15 as an admin fee if I don't reach them within 15 days. Here's the problem...NO ONE ANSWERS THE PHONE. The only contact info on this letter is a number that goes straight into a voicemail of some sort. Extremely disappointed with this service and I've been using Enterprise for years. I'm a very busy traveling professional and tracking down someone is the very last thing I want to do. Unless someone resolves this issue I will never be using them again and I will pass this experience along to others I come in contact with…
Posted : JQ3111

\* \* \*

I had the same situation : $3 toll violation, but I was assessed an $18 admin fee. The customer care rep I spoke to was very rude and refused to help me out.
Very unhappy with Enterprise. I use their rental service a lot since I travel on business but I don't think I will after this.
Posted: 27th of Jul, 2012 by blanet

\* \* \*

Similar situation. Received a letter about a toll violation and that Enterprise paid on my behalf for a vehicle rented through National. My travels from Michigan to Illinois did not involve a toll road. I tried calling the number provided and left the identification numbers for the two invoices. I fully expect to have this matter resolved as this is a clear mistake and I anticpate Enterprise will resolve this matter expeditiously. I do not intend on spending countless hours to recover $16.00 as Enterprise fully expects me to. If I do not receive an immediate response from either this or the phone message left, I intend to report this company to the BBB and will be proactive in communicating to the many people I know not to use this business.
Posted: 13th of August, 2012 by JPad

37. Despite Plaintiff's proof of payment of the toll, Defendants refused to reverse the unlawful charges and to refund the $14.00 toll charge or the $13.00 administrative fee.

38. As of the date of filing of Plaintiffs' Class Action Complaint and Jury Demand on November 1, 2016, Defendants had failed to reverse or refund those charges.

39. Furthermore, Defendants have failed to furnish any proof that Plaintiff's rental vehicle even incurred a citation or toll during the rental period.

40. Indeed, they will not. According to HTALLC.com's website, it is Defendants' policy that a consumer will not be provided with a copy of the actual citation or notice of violation. http://www.htallc.com/ehi/faq.htm.

**41.** Thus, Plaintiff suffered actual damages in the amount of $27.00, in addition to statutory damages, treble damages, and attorneys fees and costs incurred by him to rectify this issue.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action on behalf of himself and all other persons similarly situated, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:

> All natural persons and business entities who rented vehicles from any rental location owned or operated by Enterprise in the State of New Jersey or its licensees in the State of New Jersey and who were assessed toll charges and related administrative fees in connection tolls that were otherwise paid using an E-ZPass device. Excluded from the Class are: (a) Defendants, any entity in which Defendants have a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors; (b) the judge to whom this case is assigned and any member of the judge's immediate family; and (c) individuals with claims for personal injury, wrongful death and/or emotional distress.

43. **Numerosity**: The members of the Class are so numerous and geographically diverse that joinder of them all is impracticable. Plaintiff believes that the Class encompasses many hundreds and perhaps thousands of individuals whose identities can be readily ascertained

from Defendants' records. Class Members can be notified of this class action via publication and U.S. mail, e-mail, social media forums, and at addresses which Defendants have in their business records or records in their possession, custody or control. The exact size of the Class can be ascertained through appropriate discovery and class notice, but due to the nature of the trade and commerce involved in Defendants' extensive rental car program, Plaintiff believes that the proposed Class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

44. **Commonality and Predominance**: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, include, but are not limited to, the following:

   (a) Whether Defendants violated the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*;

   (b) Whether Defendants' conduct is a breach of contract concerning the payment of any tolls incurred;

   (c) Whether Defendants have been unjustly enriched;

   (d) Whether, as a result of Defendants' actions, Plaintiff and the other members of the Class have suffered ascertainable losses and whether Plaintiff and the other members of the Class are entitled to monetary damages and/or other remedies, and if so the nature of the relief;

   (e) Whether Defendants' acts entitle Plaintiff and the other members of the Class to treble damages, attorneys' fees, prejudgment interest and costs of suit; and

   (f) Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to injunctive relief.

45. **Typicality**: The claims of the individual named Plaintiff are typical of the claims of the Class in that Plaintiff alleges a common course of conduct by Defendants toward members of the Class. Without consent or authorization, Plaintiff have been improperly charged tolls and

administrative fees. Plaintiff and the other members of the Class seek identical remedies under identical legal theories, and Plaintiff's claims do not conflict with the interests of any other members of the Class in that the Plaintiff and the other members of the Class were subject to the same conduct and suffered the same harm.

46. **Adequacy**: The individual named Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff's claims are coextensive with, and not antagonistic to, the claims of the other members of the Class. Plaintiff is committed to the vigorous prosecution of the Class' claims and has retained attorneys who are highly qualified to pursue this litigation and have experience in class actions, including consumer protection actions.

47. **Superiority**: Certification under Rule 23(b)(3) will also be appropriate because a class action is superior to other available methods for the fair and efficient adjudication of this controversy given the relatively small amount of fees imposed on consumers, the complexity of the issues involved in this litigation, the enormity of Defendants' business, and the significant costs of litigation, and absent a class action, it is very likely prosecution of the claims set forth herein would not occur. Furthermore, since joinder of all members is impracticable, a class action will allow for an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort and expense.

48. **Rule 23(b)(2):** As an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification will be warranted under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendants' ongoing imposition and collection of unauthorized and wrongful fees, and to order Defendants to provide notice that the fees they paid

were unlawfully collected and of their potential right to reimbursement of the fees from Defendants.

49. Because Plaintiff seeks injunctive relief for Class Members, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members which would establish incompatible standards of conduct for Defendants. Further, adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair and impede their ability to protect their interests.

50. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

51. Plaintiff does not anticipate any difficulty in the management of this litigation.

## COUNT ONE
### (Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* (the "CFA"))
### (As to all Defendants)

52. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

53. Plaintiff is a "person" and a "consumer" pursuant to N.J.S.A. § 56:8-1(d), as he and all members of the class are natural persons as defined therein.

54. Defendants are "persons" pursuant to N.J.S.A. § 56:8-1(d), as they are business entities, corporations or company as defined therein.

55. Defendants engage in the sale of merchandise pursuant to N.J.S.A. § 56:8-1(e), in that they sell, rent and distribute vehicles to consumers.

56. Defendants have engaged in deceptive, unconscionable, unfair, fraudulent and/or misleading commercial practices in the rental of vehicles and in the subsequent performance associated with such rentals in violation the N.J.S.A § 56:8-2.

57. Specifically, Defendants pattern and practice of double-charging and collecting for tolls that have already been paid for by drivers and charging and collecting administrative fees for the service of collecting those already-paid for tolls constitutes an unfair and unconscionable commercial practice.

58. In the case of Plaintiff, as set forth above, Defendants were specifically advised that Plaintiff had been improperly charged for a toll that was already paid. Despite having been provided with proof of payment of the toll by Plaintiff via facsimile on September 4, 2015, Defendants refused to issue a refund of $27.00.

59. Defendants' act of making an unauthorized charge of $14.00 dollars for a toll that Plaintiff had already paid, and then assessing an administrative fee of $13.00 for wrongfully collecting the already-paid toll, constitutes an unfair and unconscionable commercial practice

60. Defendants refused to issue a refund upon Plaintiff's demand.

61. Furthermore, Defendants have failed to furnish any proof that Plaintiff's rental vehicle indeed incurred a citation or toll during the rental period and that any costs were advanced by Defendants on Plaintiff's behalf.

62. Defendants willfully collected the toll and the administrative fee despite having actual knowledge and proof that the toll had already been paid, thus compounding and perpetuating the unconscionability of their practice.

63. Moreover, despite demand, Defendants refused to refund the wrongful toll charge and the wrongful administrative fee unless and until Plaintiff filed the instant lawsuit, thus

further compounding and perpetuating the unconscionability of their practice and confirming the fraudulent nature of the wrongful charges.

64. Defendants' unfair and unconscionable acts and practices occurred repeatedly in their trade or business and were capable of deceiving a substantial portion of the vehicle renting public.

65. As a direct and proximate result of Defendants' violations of the CFA as set forth in the preceding paragraphs, Plaintiff suffered a concrete and ascertainable loss in the amount of $27.00.

66. But for Defendants' unconscionable act of placing an unauthorized charge on Plaintiff's credit card for an already-paid toll and wrongfully assessing an administrative fee, Plaintiff would not have suffered any damage. Said another way, Plaintiff's damages are the direct and proximate result of Defendants' violation of the CFA, in that his loss flowed directly from Defendants' acts.

### COUNT TWO
### (Breach of Contract)
### (As to Defendant Enterprise)

67. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

68. Defendant Enterprise is a party to an agreement with Defendant HTALLC whereby HTALLC provides electronic toll collection services to Enterprise, including the automatic payment of tolls.

69. Purusant to that agreement, HTALLC pays toll charges purportedly incurre by a rental vehicle and notifies Enterprise of the charges.

70. Those charges are then passed on to consumers, who are charged for reimbursing the toll charges to HTALLC as well as charged for an administrative fee of up to $25.00.

71. With respect to the payment of tolls during his rental period, Plaintiff did not elect to purchase Enterprise's optional Toll Pass Program, instead agreeing to "pay for the toll" himself, as was offered by Enterprise.

72. This agreement is memorialized in writing within Enterprise's "Customer Help / Answers" where, if a driver does not select the optional Toll Pass Program, he is told he must pay for any tolls himself.

73. Plaintiff accepted the option of paying for his own tolls during his rental period, thus forming a specific contract concerning the payment of any tolls incurred and declining other, more costly options.

74. Despite the existence of a binding contract concerning the payment of tolls, Enterprise double-charged tolls and administrative fees to Plaintiff, thereby breaching the contract.

75. Plaintiff performed all of his obligations under the contract, including paying for his own tolls during his rental period.

76. Furthermore, the Rental Agreement between Plaintiff and Defendant ELRAC, LLC provides as follows:

> 3.(c).  Additional Obligations of Renter – Unless prohibited by law Renter shall pay Owner, its affiliates or agents:
> [. . .]
> (3)    All fines, costs, charges and attorneys' fees paid or to be paid by Owner, its affiliates or a third party for legal violation, parking, tolls, towing and storage and the like occurring during the Rental Period (Fines, Tolls and Violations). Renter consents to the payment of all Fines, Tolls and Violations by Owner, its affiliates or a third party ***on Renter's behalf*** without advance notice thereof and acknowledges that such payment may prejudice Renter's ability to contest Fines, Tolls and Violations with the applicable authority. […] **emphasis added.**

77. Plaintiff did not consent to the payment of tolls, fines, or violations that are not issued on his own behalf.

78. Plaintiff already paid the subject toll at issue with his personal EZPass transponder.

79. Accordingly, the toll violation that is the subject of this dispute was not issued to Plaintiff.

80. Defendants have furnished no proof to Plaintiff that a toll violation was issued to Plaintiff.

81. However, Defendants have passed along that purported toll violation to Plaintiff without authority to do so.

82. Plaintiff suffered damages in the amount of $27.00 as a result of Defendants' breach.

## COUNT THREE
## (Unjust Enrichment)
## (As to all Defendants)

83. Plaintiff repeats and reallege all paragraphs above as if fully set forth at length herein.

84. This Count is plead in the alternative to Plaintiff's claim for breach of contract as alleged in Count Two of Plaintiff's Amended Complaint.

85. As a result of the unlawful and unconscionable practices of Defendants as described herein, Defendants obtained and retained significant monies to which they have no lawful claim, and have accordingly been unjustly enriched.

86. Defendant ELRAC, LLC is a party to an agreement with Defendant HTALLC whereby HTALLC provides electronic toll collection services to ELRAC, LLC, including the automatic payment of tolls.

87. Purusant to that agreement, HTALLC pays toll charges purportedly incurred by a rental vehicle and notifies ELRAC, LLC of the charge.

88. Those charges are then passed on to consumers, who are charged for reimbursing the toll charge to HTALLC as well charged for an administrative fee of up to $25.00.

89. Here, Defendants obtained monies by charging Plaintiff for an already-paid toll and for an unwarranted administrative fee. There is no contractual provision that allows Defendants to retain duplicate toll charges or unearned administrative fees. In fact, according to ERLAC, LLC, those charges are admittedly submitted to refund as extra-contractal charges. Thus, those monies represent an unearned benefit to the Defendants.

90. Defendants retained those monies without providing anything in return to Plaintiff. Accordingly, Defendants have been unjustly enriched.

91. In Plaintiff's case, Defendants were unjustly enriched in the amount of $27.00.

92. Defendants' collection and retention of the duplicated toll charges and administrative fees violates the fundamental principles of justice, equity and good conscience and unjustly enriches Defendants.

93. Plaintiff seeks disgorgement of all unjustly retained profits which were obtained through Defendants' unfair, unlawful, misleading and deceptive means described above.

## COUNT FOUR
### (Injunctive Relief)

94. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

95. The Enterprise toll agreement and the CFA create contractual or statutory duties which Defendants owe to Plaintiff and the Class Members, and they create legal rights inuring to Plaintiffs and the Class Members.

96. The CFA imposes on Defendants a duty not to engage in deceptive, unconscionable commercial practices. As set forth above, Defendants have violated that duty, injured Plaintiffs and the other members of the Class thereby, and violated one or more of their cognizable legal rights.

97. Defendants continue to collect duplicate toll payments and to impose unwarranted administrative fees in the manner described above. Defendants continue to retain the ill-gotten monies that are due and owing to Plaintiff and to the other members of the Class.

98. Defendants' acts and conduct have caused Plaintiff and the other members of the Class to be aggrieved, and unless enjoined by the Court, Defendants will continue to cause harm and damages to Plaintiff, other members of the Class, and future Enterprise customers.

99. Plaintiff and the other members of the Class do not have a fully adequate remedy at law by virtue of Defendants' ongoing course of conduct.

100. Irreparable injury will be suffered unless an injunction issues to prevent Defendants from continuing their improper actions, including imposing their unlawful charges.

101. Any potential injury to Defendants attributable to an injunction is outweighed by the injury that Plaintiff and the other members of the Class and the public will suffer if such injunction is not issued, and such injunction would not be adverse to the public interest.

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, demands judgment against the Defendants, as follows:

(A) Certifying a Class, as defined herein, pursuant to Fed. Civ. P. Rule 23(b)(2) and (3), and naming Plaintiff as class representative and his undersigned counsel of record as Class Counsel;

(B) On behalf of the Class, ordering injunctive relief prohibiting Defendants from future violations of the CFA and enjoining Defendants from continuing to collect duplicate toll charges and unwarranted administrative fees;

(C) Ordering disgorgement and restitution to Plaintiff and the Class Members of all monies received or collected from Plaintiff and the Class Members for duplicate toll fees and the associated administrative fees assessed;

(D) Awarding actual, consequential, statutory, and treble damages, jointly and severally, as to Defendants;

(E) Awarding all damages allowed by common law, statute, and otherwise;

(F) Awarding reasonable costs and attorneys' fees;

(G) Awarding applicable pre-judgment and post-judgment interest;

(H) Awarding all such other and further relief as Plaintiff and the Class may be entitled or as the Court deems equitable and just.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of this Complaint will be mailed to the Attorney General of the State of New Jersey within 10 days after the filing with the Court, pursuant to N.J.S.A. § 56:8-20.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## CERTIFICATION PURSUANT TO RULE 11.2

Pursuant to Rule 11.2, I hereby certify, to the best of my knowledge, that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated.

Dated: January 20, 2017

/s/ Lisa R. Bouckenooghe
Lisa R. Bouckenooghe, Esq.
David J. DiSabato, Esq.
**DiSABATO & BOUCKENOOGHE LLC**
4 Hilltop Road
Mendham, New Jersey 07945
Phone: 973.813.2525
Fax: 973.900.8445

*Attorneys for Plaintiff Mitchell Rait*
*On behalf of himself and the putative class*